BENEFIT ASSOCIATION RAILWAY EMPLOYEES *v.* HAYDEN.

Opinion delivered November 28, 1927.

INSURANCE—"ENGAGED IN AERONAUTICS"—EXEMPTION CLAUSE.—A telegraph operator killed while a passenger in an airplane, *held* not "engaged in aeronautics," within the meaning of the exemption clause in an insurance policy.

Appeal from Craighead Circuit Court, Jonesboro District; *W. W. Bandy,* Judge; affirmed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Basil Baker,* for appellee.

SMITH, J. The appellant insurance company issued its policy of insurance to Paul Trotter, a telegraph operator, insuring his life in the sum of $3,000, and appellee was designated as the beneficiary therein. This suit was

brought by the beneficiary to recover on this policy, and the cause was submitted to the court below, sitting as a jury, on the following agreed statement of facts:

"We agree that Paul Trotter, the insured, was killed at Stuttgart, Arkansas, on October 17, 1926, in an airplane accident. The facts in relation to the accident or how it occurred are as follows:

"Richard Schillberg was operating an airplane at a rice carnival or rice fair, at Stuttgart, Arkansas, and was charging passengers $2.50 for each trip on which they rode with him. Some time during the day Paul Trotter took an airplane trip with Schillberg, riding as passenger, and paid the usual fee or fare therefor. Later in the day, as he stood near the airplane, Schillberg, the pilot of the airplane, in soliciting passengers for another trip, saw Paul Trotter, and asked him if he did not want to take another ride. On this occasion Paul Trotter accepted the invitation to become a passenger to ride for a second time, and the second flight was made. The second flight was upon the same condition of payment as the first flight, but it is not known by the parties whether the payment was made on either occasion before ascending or after alighting from the airplane. On the occasion of the second flight the pilot of the machine, Schillberg, attempted to perform some 'stunts,' and, in doing so, lost control of his machine, when perhaps not more than 300 feet from the ground, and the airplane fell, killing Trotter and seriously injuring Schillberg. Prior to the time of taking out insurance Paul Trotter had been on one or two 'plane' trips. The place or location where these trips were made, purpose or reason for taking them, or the conditions under which they were made, are not known to the parties executing this agreement."

The policy sued on contained this clause: "This policy does not cover disability or fatal injury received by the insured * * * (3) While engaged in aeronautics or underwater navigation," and the company denied liability by virtue of this clause.

At the trial from which this appeal comes the insurance company requested the court to find the fact to be that the insured received his fatal injury while engaged in aeronautics, and that death while so engaged was a risk not assumed, but expressly excepted, by the policy.

The court declined to make that finding, but, on the contrary, made the following finding.

"Finding of fact No. 1. The court finds that the occupation of Paul Trotter was that of telegraph operator, and that he received his fatal injury while riding in an aeroplane as a passenger; that riding as a passenger in an aeroplane does not constitute an exception or excepted risk under the terms of the policy of insurance sued upon, but the phrase 'engaged in aeronautics' implies that the risk excepted is for the insured to have taken part in the operation of the aeroplane as an occupation or otherwise, and that merely riding as a passenger therein does not come within the exception of the policy."

Upon this finding judgment was rendered against the insurance company for the amount of the policy, with penalty and attorney's fee, and the insurance company has appealed.

It is not questioned that the insured was killed while riding in an aeroplane, and the insurance company insists that the trial court should have declared that the insured was, at the time of his death, "engaged in aeronautics" within the meaning of the clause above quoted, and that there is no liability under the policy sued on. Cases are cited by appellant which fully sustain the contention.

Appellee insists, however, that the phrase, "engaged in aeronautics," should be strictly construed, as it constitutes an exemption from the general liability assumed by the company upon the issuance of the policy, and that it means active cooperation or taking part in the aeronautical enterprise resulting in the death of the insured.

Appellee contrasts the use of the words, "engaged in," quoted above, with language employed in § 5 of the policy, providing for double indemnity in certain cases,

one of these being for an injury sustained by the insured "while *riding* as a passenger in a passenger elevator," and another provision in the same section for double indemnity for an injury sustained by the insured while *riding* as a passenger of a common carrier; and also with an exception from liability contained in § (f) "while engaged in military or naval service during the time of war."

It is insisted by appellee that the words, "engaged in," should be construed as having the same meaning in each of the instances where they were employed, and that the proper construction of those words is that actual employment or participation was contemplated, and that, if merely riding as a passenger in an aeronautical device was intended, language should have been employed which did more than inhibit one from engaging in that business.

We do not review the cases cited by counsel for appellant, as it is thought by the majority of the court that the instant case is ruled by the decisions of this court in the cases of *Sovereign Camp W. O. W.* v. *Compton,* 140 Ark. 313, 215 S. W. 372; *Miller* v. *Illinois Bankers' Life Assn.,* 138 Ark. 442, 212 S. W. 310; *Benham* v. *American Cent. Life Ins. Co.,* 140 Ark. 612, 217 S. W. 462; and *Nutt* v. *Security Life Ins. Co.,* 142 Ark. 29, 218 S. W. 672.

In the case of *Benham* v. *Ins. Co. supra,* the facts were that Benham, the insured, enlisted in the aviation branch of the military service of the United States, on February 11, 1918, at which time the United States was at war with Germany, and while still in the aviation service and during the continuance of the war, the insured died from influenza. The policy there sued on contained the following exemption from liability: "Death while engaged in military or naval service in time of war, or in consequence of such service, shall render the company liable for only the reserve under this policy, unless the company's permission to engage in such service shall have been obtained and such extra

premium or premiums as the company may require shall
have been paid.''

Permission of the insurance company for the
insured's enlistment had not been obtained, nor had he
paid the extra premium, and the company contended
that it was liable only for the reserve value of the policy;
but this court held that the company was liable for the
full face value of the policy, and in so holding it was
there said:

''The words in the restricted clause now under consideration mean something more than death to the
insured during the period of time he was in military
service of the United States. The word 'engaged' denotes
action. It means to take part in. To illustrate, a servant
injured while in the operation of a train, means that he
must be injured while assisting or taking part in the
operation of the train. An officer engaged in the discharge of the duties of his office is one performing the
duties of his office. So here the words, 'death while
engaged in military service in time of war,' means death
while doing, performing, or taking part in some military
service in time of war. In other words, it must be death
caused by performing some duty in the military service.
That is to say, in order to exempt the company from
liability, the death must have been caused while the
insured was doing something connected with the military
service, in contradistinction to death while in the service
due to causes entirely and wholly unconnected with such
service. This construction, we think, would be according to the natural and ordinary meaning of the words.
By the use of the word 'engaged' it must have been
intended that some activity in the service should have
caused the death, in contradistinction to merely a period
of time while the insured was in the service. This view
is strengthened when we consider the words following.
The words, 'or in consequence of such service,' relate
to the word death. So that death in 'consequence of
such service' means death resulting from some act of
the insured connected with the service, whether such

death occurred during the period of his service or afterwards.''

The doctrine of that case was reaffirmed in the later ease of *Nutt* v. *Security Life Ins. Co., supra.*

The decision of this court in the Benham case, *supra,* was approved by the Supreme Court of Oklahoma in the case of *Barnett* v. *Merchants' Life Ins. Co.,* 87 Okla. 42, 208 Pac. 271; by the Supreme Court of Iowa in the case of *Boatwright* v. *American Life Ins. Co.,* 191 Ia. 253, 180 N. W. 321, 11 A. L. R. 1085; and by the Kansas City Court of Appeals in the case of *Long* v. *St. Joseph Life Ins. Co.,* 225 S. W. 106, which case was affirmed on the appeal to the Supreme Court of that State, 248 S. W. 923.

It is therefore the opinion of the majority—in which the writer does not concur—that the insured was not ''engaged in aeronautics'' within the meaning of the clause above quoted, and that the trial court was correct in so holding, and the judgment of the court below will therefore be affirmed, and it is so ordered.